## Console *v.* Prudential Insurance Co., Appellant.

*Insurance—Life insurance—Stipulation as to sound health—Presumption—Evidence.*

Where a policy of life insurance provides that the policy "shall not take effect if the insured die before the date thereof, or if on such date the insured be not in sound health, "and it appears that the policy was delivered to the insured, and the first premium and many subsequent ones were paid, the burden is on the insurance company in an action on the policy to show that the insured was not in sound health on the date of the policy. If, in such an action, the plaintiff makes out a prima facie case without offering any proof as to health, and the defendant offers no evidence, there is no presumption that the insured was not in sound health at the time of the delivery of the policy, and judgment will be entered for the plaintiff.

Argued Nov. 10, 1916. Appeal, No. 208, Oct. T., 1916, by defendant, from judgment of Municipal Court Philadelphia Co., April T., 1916, No. 9, on verdict for plaintiff in case of Basile Console, Executor of the Estate of Angelica Console, v. Prudential Insurance Company of America. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit on two policies of life insurance. Before KNOWLES, J.

At the trial it appeared that the two policies were dated May 15, 1915, and August 2, 1915, respectively. They were practically alike, and each contained the following provision:

"This policy shall not take effect if the insured die

before the date hereof, or if on such date the insured be not in sound health."

The policies were delivered to the insured, who paid the first premium and a number of subsequent ones. The plaintiff made due proofs of the policies, of the death of the insured, and that the latter had complied with all the terms of his contract, but no proof was submitted as to the condition of the health of the insured on the dates when the policies were issued. The defendant company offered no evidence, although in its answer it set up unsound health of the insured as a defense. The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $192.19. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*Frederick L. Shoyer,* with him *Henry Arronson,* for appellant.—It is incumbent on plaintiff to prove as a condition precedent that the insured was in sound health on the date of policy: Lee v. Prudential Life Ins. Co., 89 N. E. (Mass.) 529; Barker v. Metropolitan Life Ins. Co., 188 Mass. 542; Anders v. Life Ins. Clearing Co., 62 Neb. 585; Reese v. Fidelity Mut. Life Ins. Assn., 111 Ga. 482; Ormond v. Fidelity, Etc., Assn., 96 N. C. 158; Dunshee v. Travelers' Ins. Co., 25 Pa. Superior Ct. 559.

*I. G. Gordon Forster,* with him *Rowland C. Evans,* for appellee.—The contention of the claimant is that the delivery of the policy and the acceptance of the premium by the defendant makes out a prima facie case so as to cast the burden of proof upon the defendant to prove that the insured was not in point of fact in good health on the date in question: Horn v. John Hancock Mut. Life Ins. Co., 12 Del. Co. Rep. 21; Horne v. John Hancock Mut. Life Ins. Co., 53 Pa. Superior Ct. 330; Dietz v. Metropolitan Life Ins. Co., 168 Pa. 504; Provident

Savings Life Assurance Society v. Cannon, 103 Ill. App. 534.

OPINION BY HEAD, J., July 13, 1917:

The disposition of the case before us must be determined by a consideration of the probative value of the evidence offered by the plaintiff and the resulting question whether or not that evidence was sufficient, prima facie, to cast upon the defendant the burden .of exhibiting a defense. The policy of insurance on which the action is founded contains this provision, inter alia, "This policy shall not take effect if the insured die before the date hereof or if on such date the insured be not in sound health, etc." The application for insurance was accepted by the defendant. Its contract of insurance was duly executed and delivered. The first premium and many subsequent ones—for they fell due weekly—were paid by the one party and accepted by the other. On the death of the insured, due proofs were forwarded to the company and demand made by the proper person for the money which the company, in and by its written contract, had promised to pay. The demand was refused, suit was brought, the cause was tried before a court and jury, and the trial resulted in a directed verdict for the plaintiff on which judgment was entered. The defendant appeals.

At the trial the plaintiff offered in evidence the policy, the execution and delivery of which were not denied, proof that the premiums had been paid, that the required proofs of death had been furnished, in a word that every obligation imposed by the policy on the insured to be performed by him, or his beneficiary, subsequent to the delivery of the policy, had been fully discharged. The plaintiff then rested his case. The defendant offered no evidence whatever. Each party prayed for a directed verdict and the learned trial judge, having determined the plaintiff had made out a prima facie case, instructed the jury accordingly.

The defendant rests this appeal on the single proposition that plaintiff, by reason of the provision we have quoted, could not recover without affirmative proof, tending to show that insured was in sound health at the time of the delivery of the policy. It is thus apparent the exact question to be determined by us is not one resting on evidence that the insured was or was not in sound health at the time named; but rather on the inquiry what legal presumption, if any, arises from the established facts of the execution and delivery of the policy and the acceptance of the first and subsequent premiums. It is conceded by counsel the point in controversy has not been determined by either of the appellate courts of Pennsylvania. Whilst at first blush there may appear to be considerable divergence in the conclusions reached by the courts of other jurisdictions, the difference between them as to the question now before us is more apparent than real.

We may concede that, under the terms of the policy before us which in this respect is of the usual character, the payment of the first premium and the delivery of the policy to the insured while in sound health are conditions precedent to the operative force of the instrument. But it must be observed, in the first place, we have not before us any question as to the payment of the first premium or of the numerous ones thereafter paid. All of the cited cases then in which it has been made to appear that the first premium never was actually paid and the policy therefore never went into effect, we can pass by without further consideration. There is another line of cases where there was evidence that, in point of fact, the insured was not in sound health when the policy was delivered. These cases are in precisely the same category and necessarily disposed of in the same manner. As already stated, there is nothing here, in the way of affirmative evidence, upon which to rest any determination by court or jury that the insured was or was not in sound health at the date of the delivery of the policy.

Do the rules of law and evidence warrant any infer-

ence on that question to be drawn from the facts proven? What are the broad principles upon which the evidential value of a contract in writing rests? Unless one who founds his action on such an instrument acquires, by reason of that fact, some advantage in the trial of a dispute between the parties, as against one who must sue on a verbal undertaking, why should men expend so much time, effort and money in reducing their contracts to writing? The payment of a good consideration is a necessary ingredient of every contract. It is a condition precedent to the existence of any contract even if there be a writing drawn in the most solemn forms known to the law. Upon proof such consideration has failed, that which on its face was a legal obligation of the highest character is converted into nudum pactum. But if the instrument be under seal, the law imports the fact of the payment of such consideration and a plaintiff need not affirmatively prove it to make out a prima facie case. So if the instrument itself recites the receipt of the consideration, the plaintiff may avail himself of such recital to make out his prima facie case. In neither event would the defendant be concluded from proving that, in point of fact, the consideration had not been paid. But in the absence of such proof, a judgment for the plaintiff would rest on a sufficient foundation.

A defendant, by certain acts or omissions, may have estopped himself to affirm or deny any litigated fact. This defendant was at liberty to take any measures it chose to ascertain the state of the health of the assured at the date of the delivery of the policy. But if the appellant's argument be sound, there is no possible way by which this defendant could have estopped itself to deny the insured was in sound health at the date of the delivery of the policy. This for the plain reason that the estoppel would only go to a matter of defense and could not extend so far that plaintiff should recover a judgment when he had failed, by his proof, to make out a case.

How should a claimant under such a policy undertake

to discharge the burden of proof which the argument of the appellant would impose upon him? One who is insane would certainly not be in sound health. Must a claimant, in order to recover, affirmatively prove the insured was sane at the time of the delivery of the policy? Sanity is the normal and usual state of the human mind, insanity the abnormal and unusual. In the absence of any proof on the subject, it is clear to us no plaintiff would be prevented recovering what was otherwise due because of a failure to affirmatively prove the insured was a sane man. The same difficulty would arise if it were required he should affirmatively establish in the first instance that insured was in sound health. Would it be necessary, in order to furnish a basis for the conclusion the insured was in sound health, to exclude by the proof the presence of any and every disease that would or could impair such health? If not that, what would be the qualifications of witnesses who are to offer opinion evidence on the subject? Would it be required that a number of experts be present and make their examination at the exact moment of the delivery of the policy? These and many other like reflections appear to us to certainly lead to the conclusion that the burden is on a defendant who sets up, by way of defense, the insured was not in sound health, to offer evidence to establish such a defense. This conclusion in no way militates against the proposition that a recovery on such a policy would be defeated if it were shown either that the first premium had not been paid or that the insured was not in sound health at the time of the delivery of the policy. Such a course of procedure surely tends to the simplification of the trial of the material questions in litigation, which is a consummation devoutly to be wished for. The assignments of error are overruled.

Judgment affirmed.